IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ROLLING THUNDER CARTS, LLC, | ) | CASE NO.: 3:25-cv-01281 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) | |
| | ) | |
| RYAN ASTON, *et al.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

Before the Court is the Motion to Dismiss Plaintiff Rolling Thunder Carts, LLC's ("Plaintiff") Lanham Act Claim for Failure to State a Claim and Decline Supplemental Jurisdiction over Plaintiff's Remaining State-Law Claims ("Motion to Dismiss") filed by Defendants Ryan Aston ("Aston"), Tara Aston ("T. Aston"), and Jeff Thiessen ("Thiessen") (collectively "Defendants"). (Doc. 16.) For the reasons stated herein, the Motion to Dismiss is GRANTED in part. Plaintiff's Lanham Act claim is DISMISSED with prejudice. Because the Court declines to exercise supplemental jurisdiction, all remaining claims are DISMISSED without prejudice. Defendants' request for attorneys' fees is DENIED.

## I. BACKGROUND

### A. Factual Allegations

Plaintiff, a limited liability company organized under the laws of Tennessee, sells, customizes, and services golf carts in Tennessee and its neighboring states. (Doc. 15 ¶¶ 1, 11.)[1] Plaintiff uses a logo with the stylized words "Rolling Thunder Carts" underneath a blue golf cart. (*Id.* ¶ 12; *id.* at 78.) In July 2025, Aston purchased a golf cart from Plaintiff. Soon after, he

[1] Citations to the Complaint are to the paragraph number assigned therein. All other citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

raised concerns about it. (*Id.* ¶¶ 13-14.) Initially, Plaintiff completed the repairs at no cost, including waiving any labor charges. (*Id.* ¶ 15.) However, Aston continued to have issues with the golf cart and requested additional repairs. (*Id.* ¶ 16.) Plaintiff agreed to perform the work but informed him it would not be able to waive the labor charges anymore. (*Id.*) Aston instead requested a full refund, including "tax, title, and finance fees." (*Id.* ¶ 17.) Since some of these amounts were "non-refundable and not retained by Plaintiff," Plaintiff offered to buy the golf cart back for 90% of the original sale price. (*Id.* ¶¶ 17-18.) Aston turned down this offer, but he has continued to use the golf cart. (*Id.* ¶¶ 18-19.)

A few months later and apparently still disgruntled by the ordeal, Aston, his wife T. Aston, and their friend Thiessen[2] began posting scathing reviews of Plaintiff. (*Id.* ¶ 21.) All three of them left negative reviews on Google (Doc. 15-2 at 79-82), Thiessen did the same on Facebook (*id.* at 83), and T. Aston discussed her experience in what appears to be two Facebook groups—Jackson Hills Neighborhood Community and Evolution Golf Cart Community Forum (*id.* at 87, 89-90). These reviews stated roughly the same thing—Plaintiff refused to fix issues with its golf carts.

Plaintiff alleges Defendants created multiple social media accounts with "substantially similar" design logos to that of Plaintiff's. (Doc. 15 ¶¶ 23, 25.) One Facebook page, titled "Rolling Thunder Sharts," was created on September 26, 2025. (*Id.* ¶ 23; Doc. 15-3 at 95.) The Facebook page "Rolling Thunder Cart Company" was created on October 3, 2025. (Doc. 15-3 at 92-94.) Both of these pages are expressly labeled "Parody/Satire." (*Id.* at 92, 95.) Neither page had any followers nor were either of the pages following others. (*Id.*) There is also a "Rolling

[2] Plaintiff claims it "has no record of Defendant Thiessen ever buying a golf cart from it or bringing one for it to service." (Doc. 15 ¶ 49.)

Thunder Sharts" or "rolling.thunder.sharts" Instagram page, also labeled "Satire/Parody," with twenty-two followers. (*Id.* at 97.) All three social media profiles have the same picture: a brown, flatulating golf cart made of fecal matter with the words "Rolling Thunder Sharts" underneath. (*See, e.g.*, *id.* at 93, 95, 97.) The two Facebook pages posted negative reviews on Plaintiff's Facebook page. (Doc. 15-2 at 83-84.) Plaintiff alleges that Defendants created these pages to leave bad reviews (Doc. 15 ¶ 23), and Defendants created other fake or anonymous accounts to do the same (*id.* ¶ 22; *see generally* Doc. 15-2).

### B. Procedural Background

Plaintiff initiated this action on November 5, 2025, in the Middle District of Tennessee. (Doc. 1.) All District Judges and Magistrate Judges in the Middle District of Tennessee recused themselves (Doc. 14), and Sixth Circuit Chief Judge Jeffrey S. Sutton designated and assigned this judicial officer to oversee the case pursuant to 28 U.S.C. § 292(b) (Doc. 19). Before Defendants answered or otherwise responded to the initial complaint, Plaintiff filed a verified amended complaint (hereinafter referred to as "Complaint"). (Doc. 15.)

In the Complaint, Plaintiff asserted five causes of action: false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), defamation, defamation against Theissen only, violation of the Tennessee Consumer Protection Act ("TCPA"), and civil conspiracy. (Doc. 15 at 65-71.) Plaintiff also requested punitive damages and a permanent injunction. (Doc. 15 at 71-72.) Plaintiff claimed the Defendants violated the Lanham Act by creating social media accounts with its name and a substantially similar logo. (*Id.* ¶¶ 29-32.) Plaintiff also alleged that the Defendants falsely accused Plaintiff of failing to repair the golf cart under warranty (*id.* ¶¶ 38-40), and that Theissen falsely suggested he was a customer when leaving his negative reviews (*id.* ¶¶ 50-51). As for the TCPA claim, Plaintiff contended

Defendants violated the statute by disseminating false information online about Plaintiff's services and therefore engaging in unfair or deceptive acts. (*Id.* ¶56-57.) On or around September 26, 2025, the Defendants posted on Instagram that they were "[l]aunching an all-out social media war on Rolling Thunder Carts." (*Id.* ¶ 64.) This together with the negative reviews formed the basis of Plaintiff's civil conspiracy claim. (*Id.* ¶ 63-64.)

Defendants move to dismiss the Lanham Act claim for failure to state a claim and ask the Court to decline to exercise supplemental jurisdiction over the remaining state law claims. (Doc. 16.) In the same motion, Defendants also seek attorneys' fees. (*Id.*) The motion to dismiss is fully briefed. (Docs. 17, 18.)

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court must dismiss a complaint if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, the complaint must make out a plausible legal claim, meaning the complaint's factual allegations must be sufficient for a court "to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

When evaluating a motion to dismiss, courts must presume all factual allegations to be true and draw all inferences in the plaintiff's favor. *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 534 (6th Cir. 2017) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)). Further, courts may consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so

long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). However, courts need not "accept as true a legal conclusion couched as a factual allegation." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

## III. LAW AND ANALYSIS

### A. Lanham Act Scope

The threshold issue is whether Plaintiff's false designation of origin claim falls within the scope of the Lanham Act. If the Defendants are using Plaintiff's mark in a "'non-trademark' way—that is, in a way that does not identify the source of a product—then trademark infringement and false designation of origin laws do not apply." *Oaklawn Jockey Club, Inc. v. Kentucky Downs, LLC*, 687 F. App'x 429, 432 (6th Cir. 2017) (quoting *Interactive Prods. Corp. v. a2z Mobile Off. Sols., Inc.*, 326 F.3d 687, 695 (6th Cir. 2003)).

Plaintiff alleges the "Rolling Thunder Cart Company" Facebook page along with its "logo and imagery" is likely to "cause confusion as to affiliation, connection, or association between Defendants and Plaintiff." (Doc. 15 ¶ 66.) As to the "Rolling Thunder Sharts" pages, Plaintiff alleges that the logos were "substantially similar" and that the "mocking substitution [was] intended to disparage Plaintiff and mislead consumers viewing the logo online, further constituting false designation of origin and unfair competition under the Lanham Act." (*Id.*) Plaintiff further contends Defendants' Instagram post stating they were "[l]aunching an all-out social media war on Rolling Thunder Carts" demonstrates an intent to target Plaintiff's business. (Doc. 17 at 138.) Defendants push back, saying Plaintiff's real concern "is not about alleged

harm caused by *confusion*, but *criticism*" and such commentary is not within the scope of the Lanham Act. (Doc. 18 at 149-50; *see also* Doc. 16 at 111.)

Several circuits, including the Sixth Circuit, have addressed cases with analogous facts and found the Lanham Act did not reach those claims. In *Taubman*, the defendant Mishkoff registered a domain name "shopsatwillowbend.com" after learning Taubman was going to build a shopping mall called "The Shops at Willow Bend." *Taubman Co. v. Webfeats*, 319 F.3d 770, 772 (6th Cir. 2003). When Taubman demanded that Mishkoff remove the domain name from the internet, he responded by registering five more domain names: "1) taubmansucks.com; 2) shopsatwillowbendsucks.com; 3) theshopsatwillowbendsucks.com; 4) willowbendmallsucks.com; and 5) willowbendsucks.com." *Id.* at 772. All of these "sucks" websites had links to information about the legal battles between the parties. *Id.* Taubman claimed the "taubmansucks.com" site was in connection with the sale of goods because the intent was to cause Taubman economic harm. *Id.* at 777. The Sixth Circuit disagreed and held:

> We find that Mishkoff's use of Taubman's mark in the domain name "taubmansucks.com" is purely an exhibition of Free Speech, and the Lanham Act is not invoked. And although economic damage might be an intended effect of Mishkoff's expression, the First Amendment protects critical commentary when there is no confusion as to source, even when it involves the criticism of a business. Such use is not subject to scrutiny under the Lanham Act. . . . We find that the domain name is a type of public expression, no different in scope than a billboard or a pulpit, and Mishkoff has a First Amendment right to express his opinion about Taubman, and as long as his speech is not commercially misleading, the Lanham Act cannot be summoned to prevent it.

*Id.* at 778.

The Ninth Circuit also addressed a case with similar facts. In *Bosley*, the defendant Kremer was a "dissatisfied former patient" of the plaintiff, Bosley Medical, and filed a medical malpractice suit that was later dismissed. *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005). Kremer nonetheless purchased a domain name "www.BosleyMedical.com," where

he summarized "the Los Angeles County District Attorney's 1996 investigative findings about Bosley, and allow[ed] visitors to view the entire document. It also contain[ed] other information that [was] highly critical of Bosley." *Id.* at 675. The defendant "earn[ed] no revenue from the website and no goods or services [were] sold on the website." *Id.* The Ninth Circuit held that "Kremer is not Bosley's competitor; he is their critic. His use of the Bosley mark is not in connection with a sale of goods or services—it is in connection with the expression of his opinion *about* Bosley's goods and services. The dangers that the Lanham Act was designed to address are simply not at issue in this case. . . . Any harm to Bosley arises not from a competitor's sale of a similar product under Bosley's mark, but from Kremer's criticism of their services." *Id.* at 679-80.

Other circuits have come out the same way when faced with these types of facts. *See, e.g.*, *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 320, 328 (4th Cir. 2015) (holding use of the NAACP's name in articles as "National Association for the Abortion of Colored People" was not actionable under Lanham Act because it was a satirical mark conveying a critical message); *Farah v. Esquire Mag.*, 736 F.3d 528, 541 (D.C. Cir. 2013) (finding use of a trademark was not commercial speech but rather satirical commentary on trademark holder's political positions); *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Rsch.*, 527 F.3d 1045, 1053-54 (10th Cir. 2008) (holding parody website was "merely . . . a comment on the trademark owner's goods or services" and "not in connection with any goods or services" as required for a Lanham Act claim).

Common to those cases and the one before the Court is that "they dealt with defendants using trademarks to engage in social commentary about the trademark holder's goods or services—not for source identification of their own." *Libertarian Nat'l Comm., Inc. v. Saliba*,

116 F.4th 530, 537 (6th Cir. 2024). Defendants have made a parody of both the name and logo of Plaintiff's company to "mock and disparage" Plaintiff's product. (Doc. 17 at 134.) Defendants are not earning any revenue from any of these sites nor are they using it for any commercial purpose. *See Taubman*, 319 F.3d at 774 ("The Lanham Act is constitutional because it only regulates commercial speech, which is entitled to reduced protections under the First Amendment."). Plaintiff even admits that "Defendants did not themselves sell goods or services under Plaintiff's mark" (Doc. 15 ¶ 30), and "[u]nless there is a competing good or service labeled or associated with the plaintiff's trademark, the concerns of the Lanham Act are not invoked." *Utah Lighthouse Ministry*, 527 F.3d at 1054.

Instead, Defendants are using parody to critique Plaintiff's services, as further evidenced by the multiple bad reviews from these parodic accounts. Defendants used Plaintiff's marks in a non-trademark way, not to designate the source of a service or good but rather to express criticism in a non-confusing manner. Defendants are Plaintiff's critics, not competitors. Even if Defendants' intent was to cause Plaintiff economic harm, that is insufficient to invoke the Lanham Act when there is no confusion. *See Taubman*, 319 F.3d at 778 ("although economic damage might be an intended effect of Mishkoff's expression, the First Amendment protects critical commentary when there is no confusion as to source, even when it involves the criticism of a business."). As such, "false designation of origin laws do not apply." *Oaklawn Jockey Club*, 687 F. App'x at 432 (quotation omitted). Plaintiff "cannot use the Lanham Act either as a shield from [Defendants'] criticism, or as a sword to shut [them] up." *Bosley*, 403 F.3d at 680. Having failed to state a plausible Lanham Act claim, Count One is dismissed with prejudice.

**B. False Designation of Origin and Unfair Competition**

Even if Plaintiff's claim were to fall within the Lanham Act, Plaintiff's claim for false

designation of origin and unfair competition[3] cannot be saved. "A Lanham Act claim for false designation of origin must contain two elements: (1) the false designation must have a substantial economic effect on interstate commerce; and (2) the false designation must create a likelihood of confusion." *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998).

**1. Interstate Commerce**

For interstate commerce to be shown, the false designation must affect the trademark holder's ability to conduct interstate business. *Id.* at 502. Defendants contend Plaintiff failed to plausibly plead this element for three reasons. First, Plaintiff merely alleges that "Defendants' actions were intended to and did affect interstate commerce." (Doc. 16 at 112; Doc. 15 ¶ 30.) Second, Plaintiff has not alleged any facts that would support an inference of any effect on interstate commerce, such as "any specific lost sale, any customer who was confused, or any specific interference with any component of its business." (Doc. 16 at 113.) Third, Defendants do not sell goods or services, much less under Plaintiff's mark. (*Id.* at 114.)

In response, Plaintiff urges the Court to find sufficient allegations of interstate commerce because Defendants posted on social media platforms "accessible to consumers and potential customers throughout the United States." (Doc. 17 at 136; Doc. 15 ¶ 30). Plaintiff also noted the Sixth Circuit's statement in *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381 (6th Cir. 2006) that it could "think of no clearer 'use' of goods 'in commerce' than offering them for sale." (Doc. 17 at 136.)

However, Defendants are not offering anything for sale, and Plaintiff does not dispute that point. Further, while "the Internet is generally an instrumentality of interstate commerce, . .

---

[3] "[F]alse designation is simply a species of unfair competition" under 15 U.S.C. § 1125(a), and the "two claims are one and the same." *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1122-23 (6th Cir. 1996).

. this does not mean any use of the Internet is necessarily commercial for the purposes of the Lanham Act." *Utah Lighthouse Ministry*, 527 F.3d at 1054; *see also id.* ("conflating these two 'commerce' requirements would greatly expand the scope of the Lanham Act to encompass objectively noncommercial speech."). Plaintiff's conclusory legal allegation that Defendants' use of its mark affected interstate commerce (Doc. 15 ¶ 30) is insufficient. *See Twombly*, 550 U.S. at 555.

**2. Interstate Commerce**

The crux of a false designation of origin and unfair competition claim under 15 U.S.C. § 1125(a) is the likelihood of confusion. *See Taubman*, 319 F.3d at 776 (even if use is commercial speech, "there is a violation only if [the] use also creates a likelihood of confusion among customers."). "Moreover, the only important question is whether there is a likelihood of confusion *between the parties' goods or services*." *Id.* (emphasis in original). Likelihood of confusion for false designation claims look to the same factors as those for trademark infringement and unfair competition: "(1) strength of plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing of channels used; (6) degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion in selecting the mark." *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 794-95 (6th Cir. 2015) (quoting *Audi AG v. D'Amato*, 469 F.3d 534, 542-43 (6th Cir. 2006)). While not all factors are equally useful in any given case, the key question is whether relevant consumers are likely to be confused. *Id.* at 795.

As a threshold matter, Defendants are not engaged in the sale of services or goods. Thus, "relatedness of the goods" and "marketing channels" are inapplicable. The absence of allegations to support these factors weighs against finding a likelihood of confusion. What is

more, Plaintiff has not alleged how strong its mark is, the degree of purchaser care, or any likelihood of expansion. While a plaintiff "need not identify specific instances of actual confusion to state a trademark infringement claim," *Bliss Collection, LLC v. Latham Companies, LLC*, 82 F.4th 499, 512 (6th Cir. 2023) ("a plaintiff need not identify specific instances of actual confusion to state a trademark infringement claim"), Plaintiff also does not allege Defendants used the mark with the intent to confuse consumers. Instead, it claims Defendants "intended to disparage Plaintiff and mislead consumers viewing the logo online." (Doc. 15 ¶ 32.) But Plaintiff does "not explain *how* the [marks] are supposed to have misled consumers in light of the whole context of the challenged [use]. And that is a problem." *Wysong Corp. v. APN, Inc. (17-1975)*, 889 F.3d 267, 271 (6th Cir. 2018) (emphasis in original). Finally, the marks are not sufficiently similar.[4] Plaintiff's logo is a blue golf cart with the words "Rolling Thunder Carts" underneath. Defendants' parody is a flatulating golf cart made of feces with the words "Rolling Thunder Sharts" beneath it. The parody's most significant word is "sharts." The marks are simply not similar enough to cause customer confusion, especially when considered in light of all the other factors.

While Plaintiff does allege one of the pages, "Rolling Thunder Cart Company," had a similar name and used Plaintiff's logo at some point (Doc. 15 ¶ 31),[5] that does not change the outcome. All of the social media pages contained disclaimers clarifying the pages were "parody" or "satire."[6] *See Taubman*, 319 F.3d at 776 (6th Cir. 2003) (finding no likelihood of

---

[4] Defendants' Motion to Dismiss includes color copies of the two logos. (Doc. 16 at 120.)

[5] It seems at some point, Plaintiff's original logo was uploaded as a photo on the "Rolling Thunder Cart Company" Facebook page, but there is nothing indicating this was used as a profile picture and if so for how long. (*See* Doc. 15-3 at 92.) The profile picture on the page is actually the parodic logo. (*Id.*)

[6] To be clear, while this labeling cuts in Defendants' favor in this case, "a parody need not spoil

confusion where alleged infringer "placed a conspicuous disclaimer informing customers that they had not reached [trademark holder's] official mall site."). All three pages have the parodic logo as their profile pictures. (*See* Doc. 15-3 at 92, 95, 97.) Contrary to Plaintiff's contention that Defendants' use of the marks is confusing, "a parody is not often likely to create confusion. Self-deprecation is one thing; self-mockery far less ordinary." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 161, 143 S. Ct. 1578, 216 L. Ed. 2d 161 (2023). And a mere "conclusory and 'formulaic recitation' of the elements of a trademark infringement cause of action is insufficient to survive a motion to dismiss." *Hensley*, 579 F.3d 603 at 611. Therefore, Plaintiff cannot state a claim for relief under the Lanham Act.

**C. Supplemental Jurisdiction**

Defendants also request the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, identified in the Complaint as Counts 2 through 5. (Doc. 16 at 125.) A district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "If the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (quoting *Wojnicz v. Davis,* 80 F. App'x 382, 384-85 (6th Cir.2003)). The Court has original jurisdiction over Plaintiff's Lanham Act claim as a federal question. 28 U.S.C. § 1331. However, since the Court has dismissed the only claim it had original jurisdiction over and the case is in the early stages of litigation, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See AES-Apex Emp. Servs., Inc. v. Rotondo*, 924 F.3d 857, 868 (6th Cir. 2019) (affirming district court's decision to decline to exercise supplemental jurisdiction where state law claim had not

---

its own punchline by declaring itself a parody." *Novak v. City of Parma*, 932 F.3d 421, 429 (6th Cir. 2019).

undergone discovery and was therefore still in the early stages of litigation). Counts 2 through 5 of Plaintiff's Complaint are therefore dismissed without prejudice.

**D. Attorneys' Fees**

In their Motion to Dismiss, Defendants request attorneys' fees associated with moving to dismiss Plaintiff's Lanham Act claim. While the Local Rules require Defendants to separately move for attorneys' fees (*see* Local Rule 54.01(b)), the Court will nonetheless address the issue here to expedite finality.

The Lanham Act allows courts to award "reasonable attorney fees to the prevailing party" in "exceptional cases." 15 U.S.C. § 1117(a). "The use of the word 'exceptional' limits the district court's discretion by reserving attorneys' fees for 'rare' or 'unusual' cases." *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 478 (6th Cir. 2022) (citations omitted). Reasons a case may qualify as "exceptional" include the strength of the plaintiff's litigating position and whether the plaintiff litigated the case in an unreasonable manner; but ultimately, the district court must decide the issue under the totality of the circumstances. *Id.* (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, 134 S. Ct. 1749, 188 L. Ed. 2d 816 (2014)).

Plaintiff's Lanham Act claim is not exceptional. While most of Defendants' use of Plaintiff's marks were parodic, Defendants did label one Facebook page as "Rolling Thunder Cart Company" and had, at some point, used a photo of Plaintiff's logo without modification. While this page would not cause confusion in the overarching context, the Court does not find that Plaintiff pursued the type of exceptionally weak Lanham Act claim required for attorneys' fees under 15 U.S.C. § 1117(a). Nor did Plaintiff litigate this case in bad faith. "A prevailing defendant is not entitled to attorneys' fees under § 1117(a) simply because the plaintiff's claims

were unsuccessful. . . . If a defendant could obtain attorneys' fees every time that it successfully defended a federal trademark or trade dress infringement claim, 'awards would be commonplace rather than exceptional.'" *Bliss Collection*, 82 F.4th at 516 (quoting *Premium Balloon Accessories, Inc. v. Creative Balloons Mfg., Inc.*, 573 F. App'x 547, 558 (6th Cir. 2014)).

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss is GRANTED in part. Plaintiff's Lanham Act claim is DISMISSED with prejudice. Plaintiff's remaining state law claims are DISMISSED without prejudice because the Court declines to exercise supplemental jurisdiction. Defendants' request for attorneys' fees is DENIED.

**IT IS SO ORDERED.**

Date: September 29, 2026

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE
*Sitting by designation and reassignment pursuant to 28 U.S.C. § 292(b)*